# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs May 21, 2014

## IVAN CHARLES GRAVES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 97941     Jon Kerry Blackwood, Judge**

---

**No. E2013-02445-CCA-R3-PC - Filed November 4, 2014**

---

Petitioner, Ivan Charles Graves, appeals from the post-conviction court's denial of his petition for post-conviction relief, claiming that he received the ineffective assistance of counsel at trial. Petitioner was convicted by a Knox County jury of first degree premeditated murder and felony murder in the perpetration of a kidnapping. The trial court merged Petitioner's convictions and sentenced Petitioner to life in prison. Following an evidentiary hearing, the post-conviction court denied relief. After a careful review of the record, we conclude that Petitioner has failed to establish that he is entitled to post-conviction relief. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. J., joined. JEFFREY S. BIVINS, J., not participating.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Ivan Charles Graves.

Herbert H. Slatery, III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Randall Eugene Nichols, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Factual background*

This case relates to the shooting death of James Kendall Porter on December 28, 2005. The facts underlying Petitioner's conviction are summarized in this court's opinion on direct appeal. *See State v. Ivan Charles Graves*, E2009-00009-CCA-R3-CD, 2011 WL 398024,

at *1-10 (Tenn. Crim. App., Feb. 8, 2011), *perm. app. denied* (Tenn., May 27, 2011). In short, the proof at trial established that Petitioner, armed with a gun, confronted the unarmed victim at the victim's motel room because Petitioner believed that the victim had burglarized Petitioner's apartment. Petitioner kidnapped the victim and beat the victim with the gun causing skull fractures. The victim escaped from Petitioner's car and ran onto the porch of a house. Petitioner followed the victim and shot the victim at least six times. Petitioner later returned to the house with his brother and moved the victim's body off the porch where he was shot to an abandoned house across the street. *Id*.

*Post-conviction hearing*

Petitioner testified that he "briefly" discussed the facts of his case with his trial counsel. He testified that he met with counsel "on numerous occasions" while Petitioner was incarcerated. He testified that counsel reviewed "bits and pieces" of discovery information with him. Petitioner discussed with counsel some recorded telephone calls that Petitioner made while he was incarcerated that the State intended to introduce into evidence. Petitioner testified that he did not see a copy of the transcript of the phone call recordings before or during trial. He testified that the transcript was not accurate and he was not aware of the inaccuracy until after his trial had concluded. Petitioner acknowledged that the audio recordings were played during the trial, but Petitioner testified that the recordings were distorted.

Petitioner's trial counsel testified that he had been a criminal defense attorney for 17 years. Trial counsel had tried more than 35 murder cases in Tennessee. Counsel was appointed to represent Petitioner in 2006. Counsel testified that he believed "this was not a good case" based on the State's evidence against Petitioner. Counsel testified that several witnesses, including Petitioner's brother, girlfriend, and a neighbor, as well as a woman who was with the victim at the time of the shooting, testified against Petitioner. Counsel testified, "[i]t was more than a jail phone call." He testified that "the State had a very, very strong case. The cl[i]ncher, though was the jail phone call." Counsel testified that he strongly recommended to Petitioner that he accept the State's plea offer, but Petitioner decided to reject the offer.

Counsel testified that he filed a motion to suppress the jail phone calls and requested that the trial court order the State to designate which of the 400 phone calls the State intended to introduce at trial. Following two pretrial hearings regarding the admissibility of the phone calls, the trial court excluded several phone calls and redacted parts of other phone calls. Counsel testified that the most damaging phone call was one in which Petitioner admitted to shooting the victim. Petitioner stated that the victim was running and he "dropped him," and Petitioner commented, "I didn't know I was that good a shot." Counsel advised Petitioner

that if he chose to proceed to trial, "he's got to deal with that phone call." Petitioner explained the phone call at trial, testifying that "he was bragging to make himself tough in the jail."

Counsel testified that the audio recordings of the jail phone calls were played for the jury. The trial court admonished the jury that "if there's a difference between what you hear and what is in the transcript, then what you hear is evidence." Counsel testified that on the recording, the jury heard Petitioner "whispering and bragging about being such a good shot[.]" Counsel testified that "it was the moment when the trial turned." Prior to trial, counsel discussed with Petitioner the State's use of the phone calls at trial. Counsel testified, "[w]e were going with the theory we're not the shooter, when the phone call comes in it changed. Because it made it clear that he would have to testify and address that phone call."

On cross-examination, counsel explained the significance, or lack thereof, of Petitioner's claim that there was a discrepancy between the transcript and the recording. Counsel testified that even if the transcript had reflected that Petitioner actually stated that he "didn't want [the victim] to get shot like that," the medical examiner's testimony that the victim was shot several times weighed in favor of Petitioner's guilt. Counsel also explained that even if Petitioner's statement in the recorded phone calls was interpreted by the jury as a statement that someone else shot the victim, Petitioner's explanation at trial that he was boasting in an effort to "create a persona of being a tough guy" contradicted that position. Regarding the accuracy of the recorded phone calls, counsel testified, "we're splitting hairs . . . . it's a distinction without a difference."

Counsel testified that he filed a motion to exclude the testimony of Jill Falls about Petitioner's prior bad acts. However, counsel made a tactical decision not to object to Ms. Falls' testimony because he believed she was not a credible witness. Counsel testified that Ms. Falls' testimony was inconsistent and incredible because she had never reported the incident when Petitioner kidnapped her and beat her on the head with a gun to police. Counsel testified that "those incredible charges that she was going to say about prior conduct really rang very false to me and I thought with the jury." He believed that the prior bad acts testimony "helped [the defense] to discredit Jill Falls."

Following the hearing, the post-conviction court concluded that Petitioner's assertion that he did not know that the recorded phone calls contained the statement by Petitioner that "he didn't know [he] was as good a shot from that distance" was "totally incredulous[.]" The post-conviction court noted in its written order denying relief that "these phone calls containing the damaging assertion were played in open court at least two times" and that Petitioner did not testify at the hearing that he told trial counsel that the statement was inaccurate. The court also noted that Petitioner admitted in his testimony at trial that he made

the statement. The trial court accredited trial counsel's testimony that Petitioner knew of the statement in the recorded phone calls and that was the reason Petitioner testified at trial. Regarding the testimony of Jill Falls, the post-conviction court found that trial counsel's decision to withdraw his objection to Ms. Falls' testimony about prior bad acts of Petitioner was a tactical decision. The post-conviction court noted that counsel "thereafter was allowed to cross exam[ine] Ms. Falls on the numerous inconsistencies in her testimony and her prior statement to police," and the court concluded that Petitioner was not prejudiced by counsel's alleged deficiency.

*Analysis*

Petitioner filed a timely notice of appeal to this Court. On appeal, he contends that the post-conviction court erroneously denied relief based upon the ineffective assistance of counsel.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id*. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of

the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6, S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Petitioner argues that trial counsel was ineffective because Petitioner did not see the transcripts of the jail phone conversations admitted at trial and because Petitioner could not recall if he was able to understand the audio recordings when they were played at trial. Petitioner testified at the post-conviction hearing that he was not bragging about being a good shot but rather stating that he did not want the victim to get shot. In his brief, Petitioner concedes that "the distinction may not be critical in terms of the Petitioner's culpability for the kidnapping and therefore culpability under a felony murder theory." Petitioner contends, however, that the alleged discrepancy "may have affected the admissibility of the transcripts" at trial. The post-conviction court clearly accredited trial counsel's testimony regarding the recorded jail phone calls, and we conclude that the evidence does not preponderate against the post-conviction court's finding. Trial counsel testified that he discussed the recordings with Petitioner, and Petitioner testified at trial in an effort to explain the statement. Petitioner has failed to show that trial counsel's performance was deficient or that he was prejudiced by counsel's alleged deficiency.

Petitioner also argues that trial counsel was ineffective because counsel did not object to Ms. Falls' testimony at trial regarding prior bad acts of Petitioner against Ms. Falls. Trial counsel testified at the post-conviction hearing that he filed a motion to exclude Ms. Falls' testimony of Petitioner's prior bad acts, and the trial court ruled that the testimony would not be allowed. However, trial counsel testified that he withdrew his objection for tactical reasons. Trial counsel cross-examined Ms. Falls on the inconsistencies in her testimony and her statement to police. The evidence does not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient, but rather a tactical decision. Petitioner cannot attack "a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994) (citing *State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1981)). In any event, Petitioner did not prove that trial counsel's failure to object to Ms. Falls' testimony was prejudicial to his defense. The other evidence offered at trial was overwhelming.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE